# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings Under<br>Chapter 12 |
| KARL A. BLAKE<br>JENNA K. BLAKE | Case No. 16-60425 |
| Debtor(s). | |
| FIRST FINANCIAL BANK, N.A., | |
| Plaintiff(s), | Adversary No. 17-06006 |
| v. | |
| KARL A. BLAKE<br>JENNA K. BLAKE | |
| Defendant(s). | |

## OPINION

This matter came before the Court for trial on Plaintiff First Financial Bank's complaint for determination of the validity, priority and extent of its lien in certain payments to the Defendant Debtors under the Agricultural Risk Coverage Program (ARC). The Defendants filed a counterclaim seeking to avoid any lien asserted by the Plaintiff as a preference under 11 U.S.C § 547. The parties agreed that there were no significant factual disputes and the matter was taken under advisement on the oral arguments and written memoranda of the parties.

## FACTS

Debtors/Defendants Karl and Jenna Blake (Debtors) filed for relief under Chapter 12 of the Bankruptcy Code on November 2, 2016. The Debtors listed First Financial Bank (Bank) as a secured creditor on Schedule D of their bankruptcy petition, having a claim of $554,388.59. The Bank asserts a secured interest in Debtors' crops, farm equipment, and general intangibles, including payments under the ARC program, pursuant to an Agricultural Security Agreement dated

1

March 25, 2011. (Plaintiff's Exhibit #4). The Debtors stipulated at hearing on August 2, 2017, that the Bank's Agricultural Security Agreement and supporting UCC Financing Statements were valid and that the Bank has a valid lien on the 2015 and 2016 ARC payments. The Debtors, however, contend in their Counterclaim that the Bank's lien on the 2015 ARC payments did not attach until the payments were made in October of 2016 and that the lien did not attach as to the 2016 ARC payments until October of 2017.[1] The Debtors assert that pursuant to 11 U.S.C § 547(e)(3), there was no transfer of a right in property until the Debtors actually received the 2015 and 2016 ARC payments. As those payments were received within 90 days of the Debtors' Chapter 12 filing or less, the Bank's lien is rendered avoidable under § 547. Conversely, the Bank argues that the Debtors acquired rights to the 2015 and 2016 ARC payments when they enrolled in those programs and that those enrollment dates were outside of the 90-day preference period for purposes of 11 U.S.C § 547.[2]

## DISCUSSION

Given that the Debtors concede that the Bank has a perfected lien on the 2015 and 2016 ARC payments, the sole issue before the Court is when did the Debtors acquire rights in the ARC payments to trigger a transfer as required by 11 U.S.C § 547(e)(3). The Debtors argue that there was no transfer until each program term ended and payment was actually made to Debtors.[3] The Bank argues that the Debtors acquired contractual rights to the 2015 and 2016 crop year payments on the date that they enrolled in the ARC program for those years.

---

[1] The parties agree that payments to Debtors under the ARC program for the 2015 crop year were made between October 11, 2016 and October 19, 2016 in the total amount of $52,117.00. Payments for the 2016 crop year were made in October of 2017.

[2] The enrollment period for the 2015 crop year was from June 17, 2015 to September 30, 2015 and the enrollment period for the 2016 crop year was from December 1, 2015 to August 1, 2016. The Debtors were timely enrolled in the ARC program for the 2015 and 2016 crop years.

[3] The program term for the 2015 crop ended on September 30, 2016 and the program term for the 2016 crop ended on September 30, 2017.

2

Pursuant to 11 U.S.C § 547(e) (3), a transfer - for the purpose of determining whether a preference has occurred - is not made until the debtors acquired rights in the property transferred. What constitutes a "transfer" and when it is complete is a matter of federal law. 11 U.S.C, §§101(54), 547(b); *Barnhill v. Johnson,* 503 U.S. 393, 112 S. Ct. 1386 (1992). The majority of published opinions considering § 547(e)(3) concern wage garnishments and the majority of courts have held that a debtor does not earn his wages and have rights in the wages until he or she actually works and is paid those wages. *See In re Tousa, Inc.* 406 B.R. 421 (Bankr. S.D. Fla. 2009); *In re Tabita,* 38 B.R. 511 (Bankr. E.D. Pa. 1984). *See also In re Freedom Group, Inc.,* 50 F.3d 408 (7th Cir. 1995). In *Freedom Group*, the 7th Circuit, holding that a notice of garnishment of debtor's bank account created a continuing lien that attached to the funds in the account but did not constitute a transfer, reasoned that: "*Between the service of the notice of garnishment … and the final order of attachment … all sorts of events might intervene which could prevent the creditor from obtaining payment.*" 50 F.3d at 412 (emphasis added). Likewise, the Supreme Court in *Barnhill v. Johnson,* held that a check was not transferred until it was honored by the bank on which it was drawn. The *Barnhill* Court found that "[m]yriad events can intervene between delivery and presentment of the check that would result in the check being dishonored. The drawer could choose to close the account. A third party could obtain a lien against the account by garnishment or other proceedings or the bank might mistakenly refuse to honor the check." 112 S.Ct. at 1390.

The Debtors contend that the garnishment decisions under §547 (e)(3) are applicable here. In support of their argument, Debtors refer to the Appendix of the 2014-2018 crop year ARC program definitions and requirements, admitted into evidence as Debtors' Exhibit C.[4] The Debtors assert that there are various requirements under ARC that Debtors must meet throughout the entire

---

[4] The actual contract signed by the Debtors for the 2015 and 2016 ARC programs was not produced or admitted in to evidence. The only evidence of Debtors' obligations under the ARC program are contained in the Appendix to the ARC program found in Debtors' Exhibit C.

3

program period in each enrolled crop year in order to be entitled to payment. The Debtors argue that the ARC program period did not expire for the 2015 crop year until October 1, 2016 and until October 1, 2017 for the 2016 crop year. The Debtors point to several sections in the Appendix that may affect their rights to ARC payments:

- To be eligible, your farm must have Farm Service Agency-defined "base acres" of wheat, feed grains, rice, oilseeds, peanuts, and/or pulses (the 21 covered commodities identified in the 2014 Farm Bill). ("Base acres are used to delineate, for USDA purposes, historical acres planted to wheat, feed grains, and other crops);

- You must be actively engaged in farming, meet Adjusted Gross Income (AGI) eligibility limits, and may not receive payments above payment limitation amounts specified in the 2014 Farm Bill;

- You must meet highly Erodible Land Conservation and Wetland Conservation requirements;

- You must annually enroll the farm and complete an acreage report for the farm of all cropland;

- You must control noxious weeds on your entire farm; and

- An acre-for-acre payment reduction occurs when fruits, vegetables, or wild rice is planted on payment acres;

There is no dispute that under ARC, the Debtors are subject to the requirements listed above as well as other various technical provisions; however, there is no evidence before the Court of how or even if these requirements are enforced.  Further, there is no evidence as to what, if any, mechanism exists to determine whether participants have complied with the program requirements in a given crop year. The only evidence the Court has as to Debtors' compliance with ARC requirements is the fact that Debtors received payments under the program for both the 2015 and 2016 crop years.  Moreover, the Court notes that several paragraphs in the Appendix either

4

terminate payment or result in the loss of payments. This implies to the Court that some *right to payment* existed as a result of entering into the ARC program contract.

This conclusion is supported by *In re Lesmeister*, 242 B.R. 920 (Bankr. D. N. D. 1999). In *Lesmeister*, the debtors operated a small grain operation. In 1996, they gave an agricultural lender a security interest in farm program payments under the Crop Disaster Assistance Program (CLDAP). In April 1999, the debtors applied for and received approximately $29,000.00 in CLDAP payments. These payments were received during the pendency of the debtors' Chapter 12 bankruptcy. The Chapter 12 Trustee sought to recover the payments for the benefit of the bankruptcy estate, arguing that while the CLDAP legislation was in place prior to the time that the debtors filed for bankruptcy, the regulations authorizing payments were not. Therefore, the Trustee reasoned, the lender's security interest in the subsidy payments was subject to avoidance. In rejecting the Trustee's position, the *Lesmeister* court explained:

> The question boils down to whether the Lesmeisters had sufficient rights in the CLDAP payments for attachment to occur. Was it the effective date of the enactment of the subsidy legislation on October 21, 1988 or was it when the Code of Federal Regulations defined the procedure by which one made an application?
>
> * * *
>
> *It is enough for attachment if the events giving rise to a claim or right of action have come into existence*. In the case at bar, it was not the Code of Federal Regulations that created in Lesmeisters a right to CLDAP payments. They were farmers who had suffered a loss and right to payments under the program the moment the Crop Loss Disaster Assistance Program become effective on October 21, 1998. This right was a proprietary interest sufficient for attachment to occur at that time.

*Id*. at 925-26 (emphasis added).

Other cases that have addressed the issue of when an interest in a government subsidy payment attaches have reached the same conclusion. *In re Otto Farms, Inc.*, 247 B.R. 757 (Bankr. C.D. Ill. 2000) involved a dispute as to the validity of a creditor's security interest in certain post-

petition payments that the debtor farmer received pursuant to the Federal Loan Deficiency Payment Program (LDP Program).  The farmer debtor argued that because he was not entitled to payments under the LDP Program until he harvested his crop and made an application for the payment--both of which occurred post-petition—he had no pre-petition interest to which creditor's lien could attach. Citing *Lesmeister* with approval, the court held that the debtor's right to participate in the LDP Program, which existed pre-petition, "was a sufficient proprietary interest for attachment to occur pre-petition." *Id.* at 760.  *See also In re Klaus*, 247 B.R. 761 (Bankr. C.D. Ill. 2000); *In re Norville*, 248 B.R. 127 (Bankr. C.D. Ill. 2000) (debtors' pre-petition right to participate in subsidy program was sufficient to create an interest in the proceeds, even though formal application for payment was not made until after the bankruptcy was filed).

The undisputed facts of this case are clearly distinguishable from those in the § 547(e)(3) garnishment cases cited by the Debtors.  The Debtors in this case voluntarily pledged a security interest to the Bank, which included an implied promise that the crops would be planted and harvested with accepted farming practices.  The garnishment cases cited by the Debtors, on the other hand, involved involuntary liens and acts of collection.

Based on the foregoing, the Court finds that the Debtors acquired contractual rights to payment under the ARC program at the time they signed the 2015 and 2016 contracts, which was well outside of the 90-day preference period for purposes of 11 U.S.C. § 547(b)(4)(A).  There was no evidence to suggest that the Debtors lost this right to payment as a result of any contract violations between the time that they enrolled in the ARC program and the expiration of the given ARC crop year period.  The fact that the Debtors acquired a "right to payment" at the time that they enrolled in the 2015 and 2016 ARC program establishes that the Debtors had "rights" at that

moment. Thus, the Debtors have failed to establish all of the elements needed to avoid the lien asserted by the Bank and their counterclaim must fail.

## **Conclusion**

The parties have stipulated that the plaintiff has a perfected lien on the 2015 and 2016 ARC payments. The Court finds that the Debtors cannot avoid the plaintiff's lien as a preference as set forth in their Counterclaim. As a result, the Court finds that judgment should be entered in favor of the Plaintiff on its adversary complaint, and that the Counterclaim asserted by the Debtors should be denied.

See Order and Judgment entered this date.

ENTERED: March 6, 2018

/s/ Laura K. Grandy
_____
UNITED STATES BANKRUPTCY JUDGE